Charles MATNEY, Jr., Appellant,

v.

Bill ARMONTROUT, Appellee.

No. 91–1052.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Feb. 11, 1992.

Michael Gross, St. Louis, Mo., argued, for appellant.

David J. Hansen, Jefferson City, Mo., argued (Frank A. Jung, on the brief), for appellee.

Before BOWMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellant Charles Matney was convicted in the Circuit Court of St. Charles County, Missouri of three counts of second degree burglary and three counts of stealing over $150.00. He was sentenced as a persistent offender to seven years imprisonment for each count, with the sentences to run consecutively.

Following a series of burglaries of businesses in St. Peters, Missouri, appellant learned that he had become the target of an investigation conducted by Detective Ed Janke of the St. Peters Police Department. Appellant then voluntarily came to the police station to answer questions, whereupon he was arrested and interviewed by Detective Janke. After signing a rights waiver form and stating that he did not want a lawyer present, appellant gave a detailed confession of how he had broken into and stolen property from various businesses. Appellant was subsequently found guilty by a jury on all six counts charged in the indictment.

On November 30, 1989, after exhausting state court remedies, appellant filed a petition for habeas corpus relief in the federal district court, alleging that his constitutional rights had been violated when he was denied access to counsel prior to making his confession and through the ineffective assistance of his trial attorney. Appellant now appeals the district court's denial of his petition.

## I.

Appellant first argues on appeal that his confession was illegally obtained when his attorney was incorrectly informed that appellant was not at the police station and thus was prevented from speaking with appellant before or during the police interrogation. Specifically appellant argues that his retained counsel, Ron Brockmeyer, learned of appellant's presence at the police station at approximately 1:00 p.m. on the day of appellant's arrest and immediately phoned the station. He informed the dispatcher that he was appellant's attorney and asked if appellant was at the station. The dispatcher replied that appellant was not at the station. Brockmeyer placed a second call to the police station approximately fifteen minutes later and told the dispatcher that he was sure that appellant was there. The dispatcher then checked with Detective Janke and was allegedly informed that appellant was not in the building. Sometime later in the afternoon, Brockmeyer placed a third call to the police station and spoke directly with Detective Janke who stated that appellant was at the station but that appellant would not be available to speak with his attorney for thirty minutes.

Appellant now argues that the police's failure to inform him of his attorney's attempts to contact him, as well as the misleading or deceptive statements made to his attorney, constituted a violation of appellant's constitutional right to due process of law.

The Supreme Court's decision in *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), is controlling on this issue. In *Moran*, the defendant confessed to the murder of a young woman. At no point during the interrogation did the defendant request an attorney. However, while he was in police custody, the defendant's sister attempted to retain an attorney to represent him. The attorney telephoned the police station and received assurances that the defendant would not be questioned until the next day. In fact, the interrogation session that yielded the inculpatory statements began later that evening. The Court found that this conduct, while distasteful, did not violate the defendant's constitutional rights. *Id.* at 424, 106 S.Ct. at 1142.

The *Moran* Court reasoned that "reading *Miranda* to forbid police deception of an *attorney* would cut the decision completely loose from its own explicitly stated rationale ... [of] insur[ing] that the suspect's right against compulsory self-incrimination is protected." *Id.* at 424–25, 106 S.Ct. at 1143 (quotation omitted). Failure by the

police to inform a defendant of an attorney's telephone call does not deprive a defendant of "knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* at 424, 106 S.Ct. at 1142. The Court made clear that, whether intentional or inadvertent, the level of police culpability in failing to inform the defendant of the telephone call "has [no] bearing on the validity of the waivers." *Id.* at 423, 106 S.Ct. at 1142.

Similar to the facts in *Moran,* the voluntariness of appellant's waiver is not at issue. Instead, the appellant argues that the police's failure to inform him of his attorney's attempts to contact him fatally undermined the validity of the otherwise proper waiver of rights. The *Moran* Court clearly rejected such an argument.

> Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right.... Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Id.* at 422–23, 106 S.Ct. at 1141–42.

■ We recognize that *Moran*'s holding is limited by the Court's comment that "on facts more egregious than those presented here police deception might rise to a level of a due process violation." *Id.* at 432, 106 S.Ct. at 1147. The Court noted that such a due process violation may be found where police misbehavior "so shocks the sensibilities of civilized society." *Id.* at 433–34, 106 S.Ct. at 1148. The police conduct at issue here does not rise to that level of culpability and in fact is similar to that which was considered and rejected in *Moran.* Therefore, we conclude that such conduct did not violate the appellant's right to due process of the law.

■ Taking this analysis one step further, appellant also argues that the fact that he had retained counsel somehow nullifies his otherwise voluntary waiver of rights. We think just the opposite is true. A defendant who retains counsel, then waives his right to such counsel upon arrest, exhibits an even greater understanding of the nature of his legal rights and, consequently, an intelligent waiver of such rights.

## II.

Appellant next argues that the district court erred in denying habeas relief because the evidence reflects a series of substantial errors in trial counsel's representation of appellant which constitutes ineffective assistance of counsel. Appellant asserts that trial counsel (1) refused to allow appellant to testify at trial, (2) refused to interview or call appellant's parents as witnesses, (3) failed to interview or call Gerald Ell as a witness, (4) introduced or failed to object to several instances of hearsay testimony, (5) failed to file a motion for a new trial, and (6) placed the prosecuting attorney on the stand without previously interviewing him.

■ In order to establish ineffective assistance of counsel in a habeas corpus proceeding, the defendant must show that counsel's performance fell below an objective standard of reasonableness and that these deficiencies in counsel's performance were prejudicial to the defense so that, but for counsel's performance, there exists a reasonable probability that the outcome of the case would have been different. *Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984); *Couch v. Trickey,* 892 F.2d 1338, 1343 (8th Cir.1989).

■ We quickly dispose of several of appellant's claims of ineffective assistance of counsel under this standard. First, appellant's trial counsel stated that he discouraged appellant from testifying on his own behalf because he believed that appellant would perjure himself and would open an inquiry into appellant's prior burglary and stealing convictions. Defense counsel also stated that he did not call Gerald Ell to

testify because he believed that Ell would have been impeached by the police officers who testified at trial. He also did not call appellant's parents because he believed they would commit perjury if they were allowed to testify. These decisions were all based on trial strategy and do not constitute ineffective assistance of counsel. Even if we were to hold that these decisions fell below an objective standard of reasonableness, no prejudice resulting from such deficient performance has been shown.

██ We more closely scrutinize appellant's argument that he received ineffective assistance of counsel when his trial attorney introduced or failed to object to several instances of hearsay testimony and then called the prosecuting attorney to testify as a defense witness without previously interviewing him. Although we are troubled in particular by defense counsel calling the prosecuting attorney to the stand as a defense witness, we cannot find that this practice was so prejudicial to the appellant as to constitute ineffective assistance of counsel within the *Strickland* standard, in light of the otherwise overwhelming evidence of appellant's guilt. As the Missouri Court of Appeals noted:

> Testimony established that defendant made a detailed confession of the burglaries which included a factually correct account of how he and his accomplices gained access to the business, how the ransacking occurred, and which items were stolen. These accounts matched the testimony given by the victims. There was also testimony that defendant hit himself on the forehead while burglarizing a safe at one of the businesses and that defendant still had a mark on his forehead at the time the confession was given.... Additionally, a witness testified that he had received threats from defendant warning the witness that his life would be in jeopardy if he testified.

*State v. Matney,* 721 S.W.2d 189, 191 (Mo. App.1986).

We conclude that based on the otherwise overwhelming evidence of guilt, none of the instances of alleged ineffective assistance of counsel rise to the level of a constitutional violation of appellant's rights under the standard set forth in *Strickland,* as no prejudice from any of the alleged errors by trial counsel can be shown.

### III.

Based on the foregoing, we conclude that the district court did not err in denying appellant's motion for writ of habeas corpus. The judgment of the district court is affirmed.